1

2

3          UNITED STATES DISTRICT COURT

4          NORTHERN DISTRICT OF CALIFORNIA

5          SAN JOSE DIVISION

6

7     JUANA GARCIA,                          Case No. 20-cv-02919-BLF

8              Plaintiff,                     **ORDER GRANTING MOTION TO
                                              COMPEL ARBITRATION AND
9          v.                                 MOTION TO DISMISS ALL STATE
                                              CLAIMS**
10    DIN TAI FUNG RESTAURANT, INC., et
      al.,                                    [RE: ECF 16]
11
               Defendants.
12

13

14          Defendants Din Tai Fung Restaurant, Inc., Din Tai Fung (SF) Restaurant, LLC, and Selena

15    Soto (collectively "Din Tai Fung") move this Court to compel Plaintiff Juana Garcia ("Garcia") to

16    arbitrate her employment-related claims and to dismiss all state claims. Mot. to Compel, ECF 16.

17    Soto filed a Motion for Joinder to allow her to adopt the other Defendants' arguments as her

18    responsive pleading, and the Court granted her motion. *See* Order, ECF 37. Garcia opposes the

19    motion. Opp'n, ECF 19. Din Tai Fung has replied. Reply, ECF 24. The Court heard oral arguments

20    on October 22, 2020.

21          For the foregoing reasons, the Court GRANTS Din Tai Fung's Motion to Compel

22    Arbitration. Additionally, the Court declines to exercise supplemental jurisdiction over Garcia's

23    remaining California Labor Code Private Attorney General Act ("PAGA") claim, and therefore

24    GRANTS Defendants' Motion to Dismiss WITHOUT PREJUDICE so Garcia can refile in state

25    court.

26

27    **I.    BACKGROUND**

28          Din Tai Fung employed Garcia, who was a full-time, non-exempt employee in Santa Clara

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

County from January 2019 until March 16, 2019.  Am. Compl. ¶¶ 16, 34, ECF 42; Decl. of Juana Garcia ¶ 2 ("Garcia Decl."), ECF 19-2.  In early 2019, Din Tai Fung required all employees to review the company's Mutual Arbitration Policy ("MAP") and execute an Employee Agreement to Arbitrate ("EAA") as a condition of their continued employment.  Decl. of Ashley Yang ¶ 2 ("Yang Decl."), ECF 16.  In February 2019, Garcia was asked to sign the MAP and EAA on a mobile phone application and given until the next business day to make the decision.  Garcia Decl. ¶ 3.  Garcia's supervisor informed Garcia that she would be terminated unless she signed the documents.  *Id.*  The MAP expressly states that signing the EAA is a condition of continued employment.  Ex. A, Arbitration Agreement 3, ECF 16.  On February 13, 2019, Garcia executed her EAA, thus agreeing to the MAP.  Yang Decl. ¶ 2.

On April 28, 2020, Garcia filed a wage and hour complaint under federal and California labor laws on behalf of herself and all others similarly situated.  *See generally* Compl., ECF 1. She filed an amended complaint on October 21, 2020. See Am. Compl.  In her amended complaint, Garcia asserts ten causes of action against Din Tai Fung: (1) violation of the Fair Labor Standards Act (FLSA) for failure to pay overtime wages; (2) failure to pay all minimum wages owed; (3) failure to pay all overtime wages owed; (4) failure to pay reporting time pay; (5) failure to provide meal periods or pay additional wages; (6) failure to provide rest periods or pay additional wages; (7) failure to pay all wages earned at termination or resignation; (9) violation of Unfair Competition Law; (9) enforcement of the California Labor Code Private Attorney General Act ("PAGA"); and (10) failure to timely produce records upon request.  Am. Compl. ¶ 5, ECF 42.  Of the ten causes of action, only one arises under federal law.  To support these claims, Garcia alleges, *inter alia*, that Din Tai Fung violated several state and federal labor laws by requiring employees to wear protective equipment and hand wash prior to clocking in, before and after meal periods, and after clocking out at the end of shifts without compensation; asking employees to report for scheduled shifts but furnish work for less than half the scheduled time; failing to authorize and permit the appropriate number of rest breaks and meal periods; failing to pay all wages due within the required time period after discharge or employment; and failing to permit employees from inspecting their respective

employment records.  Am. Compl. ¶¶ 53, 71, 81, 86, 95, 119.

On June 9, 2020, Din Tai Fung filed a Motion to Compel Arbitration and Motion to Dismiss, asking this Court to require Garcia to arbitrate all employment-related claims (excluding the PAGA claim) pursuant to the EAA and to dismiss all state claims.  Mot. 1.  Garcia, in response, asserted the arbitration agreement was unconscionable, Din Tai Fung waived the opportunity to compel arbitration, and the Court should exercise supplemental jurisdiction over Garcia's state claims. Opp'n 13-14.  Din Tai Fung rejected the merits of Garcia's argument.  Reply 1, 10.

Before this Court is whether the Agreement is enforceable against Garcia, and whether this Court should maintain jurisdiction over the state claims. As explained below, the Court finds that the EAA is enforceable against Garcia, and the Court declines supplemental jurisdiction over the remaining PAGA claim.

## II.   THE ARBITRATION AGREEMENT

The arbitration agreement containing the MAP and EAA were presented to Garcia as a single three (3) page document and separate from any other document.  Yang Decl. ¶ 3.  In early 2019, every Din Tai Fung employee was required to review the MAP and sign the new EAA.  *Id.* ¶ 2.  Din Tai Fung provided the arbitration agreement to Garcia using a secure mobile phone application.  *Id.* ¶¶ 3-4.  Garcia was not required to sign the agreement on the spot.  Garcia Decl. ¶ 3.  She had until the next business day to review and sign the arbitration agreement.  *Id.*  On February 13, 2019, Garcia signed the EAA, thus agreeing to the MAP.  Yang Decl. ¶ 2.

1.   Mutual Arbitration Policy

The first two pages of the arbitration agreement contain the MAP. The top of page one displays "**NOTICE TO EMPLOYEES ABOUT OUR MUTUAL ARBITRATION POLICY**." Arbitration Agreement 1 (emphasis in original).  The first paragraph begins, "('Din Tai Fung') has adopted and implemented a new arbitration policy, requiring mandatory, binding arbitration of all disputes, for all employees, regardless of length of service."  *Id.*  Below it is a disclaimer in capital letters and bold-face font: "**IT APPLIES TO YOU**."  *Id.* (emphasis in original).  The next header

United States District Court
Northern District of California

reads "**ARBITRATION POLICY & PROCEDURES**." *Id.* (emphasis in original).  The second paragraph under this header details the MAP's scope: "The MAP applies to all Din Tai Fung employees, regardless of length of service or status, and covers all disputes relating to or arising outat [sic] of an employee's employment with Din Tai Fung or the termination of that employment." *Id.*  Below that is an underlined sentence indicating that being employed with Din Tai Fung also constitutes acceptance of the MAP: "Your decision to accept employment or to continue employment with Din Tai Fung constitutes your agreement to be bound by the MAP." *Id.* (emphasis in original).  The final paragraph indicates the substantive law that will apply to arbitrations covered by the MAP:

> The MAP shall be governed solely by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. If for any reason the FAA is deemed inapplicable, only then will the applicable state arbitration statutes govern the MAP. The National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") in place at the time of the dispute will govern the procedures to be used in arbitration, unless you and Din Tai Fung agree otherwise in writing. The rules can be found at http://www.adr.org in the section entitled Employment or by request to Din Tai Fung in writing.

*Id.*

The top of page 2 displays "**WHAT IS ARBITRATION**" with several paragraphs below explaining how arbitration works.  *Id.* at 2 (emphasis in original). The second header reads "**CONCLUSION,**" with the sentence below reading "If after reading the above summary of Din Tai Fung arbitration policy, you have questions, you should direct them to Human Resources." *Id.* (emphasis in original).

2.  Employee Agreement to Arbitrate

The third page of the arbitration agreement is the EAA, whose terms were enclosed in a black border. The first paragraph reads:

> I acknowledge that I have received and reviewed a copy of Din Tai Fung's Mutual Arbitration Policy ("MAP"), and I understand that it is a condition of my employment and a condition of my continued employment with Din Tai Fung. I agree that it is my obligation to make use of the MAP and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Din Tai Fung.

Arbitration Agreement 3 (emphasis in original).

The second paragraph establishes that arbitration will be the sole and exclusive remedy for all claims and disputes related to the employee's employment and termination. *Id.* It also acknowledges that Din Tai Fung and the employee "agree to forego any right [they] each may have had to a jury trial on issues covered by the MAP, and forego any right to bring claims on a representative or class basis." *Id.* The paragraph ends with the following statement: "I also agree that such arbitration . . . will be conducted under the Federal Arbitration Act and the applicable procedural rules of the American Arbitration Association ('AAA')." *Id.*

## III.    LEGAL STANDARD

### A.    Motion to Compel

The parties agree that the FAA applies. *See* Mot. 2; Opp'n 1-2 (stating the arbitration agreement is covered by American Arbitration Association's procedural rules without challenging the application of the FAA). The Federal Arbitration Act ("FAA") governs the enforceability and scope of an arbitration clause. 9 U.S.C. §§ 1 *et seq.* The FAA embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (internal quotations and citations omitted). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016). A moving party need only prove by a preponderance of the evidence that an agreement to arbitrate the claims exists. *Bridge Fund Capital Corp. v. Fastbucks Franchise Coorp* (9th Cir. 2010). "[T]he party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 Fed. App'x. 740, 742 (9th Cir. 2012).

Section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 "preempts state statutes and state common law principles that undercut the

United States District Court
Northern District of California

1   enforceability of arbitration agreements, unless the savings clause applies." *Poublon v. C.H.*
2   *Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). The savings clause "permits agreements to
3   arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or
4   unconscionability, but not by defenses that apply only to arbitration or that derive their meaning
5   from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (internal
6   quotations omitted); 9 U.S.C. § 2.

7          In deciding whether to compel arbitration, this Court must address two gateway issues: "(1)
8   whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers
9   the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean*
10  *Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "However, these gateway issues can be expressly
11  delegated to the arbitrator where the parties clearly and unmistakably provide otherwise." *Id.* (citing
12  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "When the parties'
13  contract delegates the arbitrability question to an arbitrator, a court may not override the contract."
14  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 526 (2019).

16      **B.   Motion to Dismiss**

17         "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a
18  claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force*
19  *v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732
20  (9th Cir. 2001)). When determining whether a claim has been stated, courts accept as true all well-
21  pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP*
22  *Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, courts need not "accept as true
23  allegations that contradict matters properly subject to judicial notice" or "allegations that are merely
24  conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec.*
25  *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While
26  a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter,
27  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

1    662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially

2    plausible when it "allows the court to draw the reasonable inference that the defendant is liable for

3    the misconduct alleged."  *Id.*

4         On a motion to dismiss, the Court's review is limited to the face of the complaint and matters

5    judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star*

6    *Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  However, under the

7    "incorporation by reference" doctrine, the Court also may consider documents which are referenced

8    extensively in the complaint and which are accepted by all parties as authentic.  *In re Silicon*

9    *Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *abrogated on other grounds by S.*

10   *Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

**IV.    DISCUSSION**

12        Din Tai Fung seeks to compel individual arbitration, arguing that a valid arbitration

13   agreement exists and encompasses the issues in dispute, and that the scope and interpretation of

14   the agreement are delegated to the arbitrator.  Mot. 5, 12.  Garcia responds with two defenses: (1)

15   Din Tai Fung waived any rights to compel arbitration by failing to disclose the existence of the

16   arbitration agreement, and (2) the arbitration agreement is unenforceable because it is both

17   procedurally and substantively unconscionable.  Opp'n 2-3.

18        Din Tai Fung also seeks to have all state claims dismissed because Garcia's federal cause

19   of action is subject to mandatory arbitration, thus the Court would not have original jurisdiction

20   over the action and may not extend supplemental jurisdiction over the state law claims.  Mot. 14-

21   15.  Alternatively, Din Tai Fung asks the Court to decline to exercise supplemental jurisdiction

22   because the state claims substantially predominate over the lone federal claim.  Mot. 15-16.  In

23   response, Garcia raised three defenses: (1) the lone federal claim is not subject to arbitration

24   because the arbitration agreement is unenforceable, (2) the Court has original jurisdiction because

25   Garcia amended the complaint to include a Class Action Fairness Act (CAFA) claim, and (3) that

26   the Court—in the event it does not have original jurisdiction— should exercise supplemental

27   jurisdiction in the interest of fairness. *See generally*, Opp'n; Am. Compl. 5.

United States District Court
Northern District of California

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**A.    Motion to Compel Arbitration**

First, the Court must determine whether the parties agreed to arbitrate.  Din Tai Fung provided sufficient evidence that Garcia digitally signed the arbitration agreement using a secure mobile phone application.  *See* Yang Decl. ¶¶ 4-6 (stating that Garcia electronically accessed and signed the arbitration agreement using a company-issued username, a user-defined password, and the last 4 digits of her social security number).  Garcia does not contest the fact that she signed the agreement.

Second, the Court must determine whether the scope of the arbitration agreement encompasses the employment claims at issue.  The MAP narrows the scope of arbitration to employment-related claims: "The arbitration process is limited to disputes, claims or controversies . . . that in any way arise out of, relate to or are associated with your employment with Din Tai Fung or the termination of your employment."  Arbitration Agreement 2.  Moreover, the MAP also specifies a set of arbitration rules that will govern arbitration: "The National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") in place at the time of the dispute will govern the procedures to be used in arbitration unless you and Din Tai Fung agree otherwise in writing." *Id.* at 1.  In the Ninth Circuit, it is well-established that incorporation of such arbitration rules "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130; *see also Interdigital Tech. Corp. v. Pegatron Corp.*, No. 15-CV-02584-LHK, 2016 WL 234433, at *5 (N.D. Cal. Jan. 20, 2016); *Cooper v. Adobe Sys. Inc.*, No. 18-CV-06742-BLF, 2019 WL 5102609, at *6 (N.D. Cal. Oct. 11, 2019); *Allen v. Shutterfly, Inc.*, No. 20-CV-02448-BLF, 2020 WL 5517172, at *4 (N.D. Cal. Sept. 14, 2020). Garcia does not oppose the delegation or challenge the arbitration agreement's applicability to her employment claims, arguing instead that the agreement itself is unenforceable.

The Court finds that an arbitration agreement exists between Din Tai Fung and Garcia, and it encompasses Garcia's employment issues in dispute. The next question is whether the arbitration agreement is enforceable.

8

i.   **The Arbitration Agreement is not Unconscionable, and Therefore It Is Enforceable**

Garcia argues that the agreement is unenforceable because it is an unconscionable adhesion contract. Since Garcia was employed in California, this Court will apply California contract law. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'") (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Tompkins*, 840 F.3d at 1024 (holding that "we are bound by the California Supreme Court's most recent articulation of its [general unconscionability] standard").

"Under California Law, 'the party opposing arbitration bears the burden of proving any defense, such as unconscionability'" *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle Museum Tower Assn v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 236 (2012)). To establish a defense of unconscionability, "the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Id.* (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 910 (2015)). Procedural and substantive unconscionability is on a sliding scale where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal.4th 83, 114 (2000)).

a.   Procedural Unconscionability

Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power" where oppression "arises from an inequality of bargaining power that results in real negation and an absence of meaningful choice." *Id.* at 1260 (internal quotations omitted). "California courts have held that oppression may be established by showing the contract was one of adhesion or by showing from the totality of the circumstances surrounding the negotiation and formation of the contract that it was oppressive." *Id.* (internal quotations omitted).

The Ninth Circuit held that "the threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201,

1210 (9th Cir. 2016) (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th. Cir. 2006) (alterations and internal quotation marks omitted)).   An adhesion contract is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to accept the contract or reject it."   *Id.* at 1261 (quoting *Armendariz*, 24 Cal. 4th at 113).   There is no "rule that an adhesion contract is per se unconscionable." *Id.*

To answer the threshold inquiry, the Court finds the arbitration agreement to be an adhesion contract. Din Tai Fung presented the agreement on a take-it-or-leave-it basis by conditioning Garcia's employment on accepting the terms.   Arbitration Agreement 3.   As the employer, Din Tai Fung had the superior bargaining strength because there were no qualifications to this pre-condition for employment.   Also, Garcia was not allowed to negotiate any terms of the arbitration agreement and felt the only option was to accept or reject it if she wished to remain employed.   Garcia Decl. ¶ 6.   Furthermore, the EAA itself appears to be a standardized form because it refers to the employee as "you," contains a blank employee name field, is presented to all non-exempt employees and new hires.   Arbitration Agreement 3; Yang Decl. ¶ 2.   The Court finds that Garcia has established that the arbitration agreement has at least some degree of procedural unconscionability.

In assessing the degree of procedural unconscionability, the Court finds it minimal in light of the circumstances surrounding the creation of the contract.   Several courts have found that "mandatory arbitration agreements offered as a precondition to employment are enforceable provided there is no indication that applicants signed the agreement under duress, were lied to, or otherwise manipulated into signing the agreement."   *See, e.g., Snipes v. Dollar Tree Distribution, Inc.*, No. 15-CV-00878-MCE-DB, 2019 WL 5830052, at *3 (E.D. Cal. Nov. 7, 2019) (citing *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)); *Hermosillo v. Davey Tree Surgery Co.*, No. 18-CV-00393-LHK, 2018 WL 3417505 (N.D. Cal. July 13, 2018).   "The adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." *Poublon*, 846 F.3d at 1261-62 (citing *Baltazar*, 62 Cal. 4th at 1245).   Garcia claims there is high procedural unconscionability because several procedural defects allowed Din Tai Fung to trick her into signing an arbitration agreement she was unaware of.   For example, Garcia states that (1) Din

United States District Court
Northern District of California

1    Tai Fung used her pregnant status to pressure her into signing the EAA, (2) provided the arbitration

2    agreement only in English knowing she had limited English capability, (3) hid the agreement "in a

3    packet of around 30 documents within a mobile telephone application," and (4) failed to attached a

4    copy of the governing AAA rules.  Opp'n 4-6; Garcia Decl. ¶¶ 3-6.  The Court analyzes each of

5    these allegations in turn.

6         First, Garcia's claim that she was targeted for being pregnant and needing the work to pay

7    for living and medical expenses adds little procedural unconscionability.  Din Tai Fung was not

8    manipulating or targeting Garcia directly because the company required all employees to sign the

9    EAA as a pre-condition to new or continued employment.  Yang Decl. ¶ 2.  Garcia also offers

10   insufficient evidence that Din Tai Fung used Garcia's pregnancy to force her to sign the EAA.

11        Second, providing an arbitration agreement only in English to an employee with limited

12   English capability adds "only a minimal degree of procedural unconscionability" when there is an

13   opportunity to seek help.  *See Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW SSX, 2014

14   WL 5088240 (C.D. Cal. Oct. 7, 2014) (compelling arbitration where the company provided only an

15   English-language arbitration agreement to a Spanish-speaking employee).  While Garcia cannot use

16   her lack of English proficiency to disclaim her assent to the arbitration agreement terms, the inability

17   to read an agreement "is still a factor that increases procedural unconscionability when other

18   indications of oppression and surprise are present."  *Perez v. DirecTV Grp. Holdings, LLC*, 251 F.

19   Supp. 3d 1328, 1344 (C.D. Cal. 2017).  Garcia had until the next business day to review the MAP

20   before signing the EAA, which affords her an opportunity to ask questions or request a translation.

21   Garcia Decl. ¶ 3; *see Chico*, 2014 WL 5088240, at *15 (finding that "if [the company] did not give

22   [employee] an opportunity to ask questions, consult with an attorney, take the arbitration agreements

23   home, or obtain a Spanish translation of the [arbitration agreement], it would support [employee's]

24   claim of procedural unconscionability").  By having time to seek assistance or inquire further about

25   the arbitration agreement, Garcia faced a lessened degree of oppression and surprise.

26        Third, Garcia's claim that the arbitration agreement was buried in about 30 documents is

27   unsubstantiated and would not affect procedural unconscionability.  Din Tai Fung argues that Garcia

28   was presented with the MAP and EAA "as a single three (3) page document . . . not included within

a handbook or any other document."  Yang Decl. ¶ 3; *see* Arbitration Agreement 1-3.  Moreover, while Garcia claims to have been given "around 30 documents" in her opposition brief, opp'n 5, her declaration does not quantify the number of documents she was given.  Garcia Decl. ¶ 5.  Even if the arbitration agreement was buried among other documents, the agreement would not increase procedural unconscionability because it was only three pages long and formatted to draw the reader's attention and minimize surprise.  *See* Arbitration Agreement 1-3; *see also Hermosillo*, 2018 WL 3417505, at *17 (finding an inconspicuous arbitration clause in the last line of a nineteen line, ten-point font paragraph minimally affects the clause's procedural unconscionability); *Limon v. ABM Indus. Groups, LLC*, No. 18-CV-00701, 2018 WL 3629369, at *5 (S.D. Cal. July 31, 2018) (finding an arbitration agreement not procedurally unconscionable where it was a separate, three-page document that was binding on both the employer and employee).

Lastly, failing to attach the AAA rules to the arbitration agreement is not procedurally unconscionable, absent a showing that rules are substantively unconscionable.  Garcia did not identify any aspect of the rules that surprised her or were unfairly one-sided.  *See, e.g., Hermosillo*, 2018 WL 3417505, at *17 (finding that Defendant company's failure to provide a complete copy of the AAA rules does not add to the procedural unconscionability of an employment application); *Poublon*, 846 F.3d at 1262 ("incorporation by reference [of the AAA rules], without more, does not affect the finding of procedural unconscionability").  In addition, the MAP explicitly indicates "[t]he [AAA] rules can be found at http://www.adr.org in the section entitled Employment or by request to Din Tai Fung in writing."  Arbitration Agreement 1; *see Limon*, 2018 WL 3629369, at *6 (finding failure to physically attach the AAA rules, by itself, is insufficient to show unconscionability), *Lucas v. Gund Inc.*, 450 F. Supp. 2d, 1125, 1131 (C.D. Cal. 2006) ("while it may have been unfair to have [Plaintiff] sign an agreement refencing rules which were not attached at the time, it would only render the agreement unenforceable if those rules were substantively unconscionable").

The Court concludes that the arbitration agreement is an adhesion contract with minimal procedural unconscionability.  Thus, enforceability turns on whether the arbitration agreement has a high degree of substantive unconscionability.

b.  Substantive Unconscionability

1    While "California courts have articulated numerous standards for determining substantive

2    unconscionability," the "central idea is that the unconscionability doctrine is concerned . . . with

3    terms that are unreasonably favorable to the more powerful party." *Poublon*, 846 F.3d at 1261.

4    "Not all one-sided contract provisions are unconscionable." *Id.* (internal quotations omitted). "In

5    the employment context, if an employee must sign a non-negotiable employment agreement as a

6    condition of employment but there is no other indication of oppression or surprise, then the

7    agreement will be enforceable unless the degree of substantive unconscionability is high." *Id.* at

8    1260 (internal quotations omitted).

9    The Court finds the arbitration agreement demonstrates insufficient amounts of substantive

10   unconscionability as to render it unenforceable.  Garcia argues that the arbitration agreement does

11   not provide for more than minimal discovery, and that this sole reason makes the arbitration

12   agreement unconscionable.  Opp'n 6.  This argument references the *Armendariz* factors, which

13   consist of five minimum requirements for mandatory employment arbitration agreements.

14   *Armendariz*, 24 Cal.4th at 102.  These agreements must:

15       (1) provide for neutral arbitrators;
16       (2) provide for more than minimal discovery;
         (3) require a written award;
17       (4) provide for all of the types of relief that would be available in court; and
         (5) not require employees to pay either unreasonable costs or any arbitrators' fees
18       or expenses as a condition of access to the arbitration form.

19   *Armendariz*, 24 Cal.4th at 102.  Focusing on *Armendariz* factor 2, Garcia claims the "provisions for

20   discovery in the AAA rules provide for far less discovery than [Garcia] would need to prove her

21   case.  *Id.* at 8.  However, "it has been frequently held that the AAA rules allow for sufficient

22   discovery under both California and federal standards."  *Limon*, 2018 WL 3629369, at *6; *see also*

23   *Roman v. Superior Court*, 172 Cal. App. 4th, 1462, 1475-76 (2009) ("There appears to be no

24   meaningful difference between the scope of discovery approved in *Armendariz* and that authorized

25   by the AAA employment dispute rules."); *Lucas*, 450 F. Supp. 2d at 1133 ("The [AAA] rules do

26   not limit discovery other than to provide that only 'necessary' discovery shall be conducted, but this

27   is the same standard as applies in court: parties at trial cannot engage in unfettered discovery.")

28

United States District Court
Northern District of California

United States District Court
Northern District of California

(citing Fed. R. Civ. P. 26(b)(2)).  Furthermore, the MAP clearly provides for adequate discovery, stating: "The MAP provides that arbitration under the MAP will be governed by the National Rules for the Resolution of Employment Disputes of the American Arbitration Association (AAA)."  Arbitration Agreement 2.  Moreover, the AAA rules provide, "[t]he arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, documentation production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration."  *Employment Arbitration Rules and Mediation Procedures* (formerly *The National Rules for the Resolution of Employment Disputes*), American Arbitration Association, 19 (2009).  Thus, this Court finds the agreement provides for adequate discovery.

In analyzing the remaining *Armendariz* factors, the Court finds the arbitration agreement not substantively unconscionable.  First, the MAP provides for a neutral arbitrator: "[A]n impartial and independent arbitrator chosen by agreement of both you and Din Tai Fung will be retained to make a final decision."  Arbitration Agreement 2.  Second, the MAP states that the arbitrator "shall render a written decision."  *Id.*  Third, it provides for all types of relief that would be available in court.  *Id.* ("No remedies that otherwise would be available to you individually . . . in a court of law, however, will be forfeited by virtue of this agreement . . . .").  Lastly, employees are not required to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration form.  *Id.*  ("Din Tai Fung and you will share the cost of the AAA's filing fee and the arbitrator's fees and costs, but your share of such fees and costs shall not exceed an amount equal to your local court civil filing fee.").  *See Armendariz*, 24 Cal.4th at 110-11 ("[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court.").

It follows that the arbitration agreement is not unconscionable because Garcia has not shown a high degree of substantive unconscionability.  *See Poublon*, 846 F.3d at 1261 (holding that an employing who must sign a non-negotiable employment agreement as a condition of employment— absent other indicators of oppression or surprise—is enforceable unless the is a high degree of

substantive unconscionability).  Therefore, the arbitration agreement is enforceable absent Din Tai Fung waiving its right to compel arbitration.

### ii. Din Tai Fung Did Not Waive its Right to Compel Garcia to Comply with the Arbitration Agreement

Garcia argues that Din Tai Fung "waived any purported right to compel arbitration by failing to disclose the existence of the arbitration agreement, despite repeated requests of Plaintiff's counsel."  Opp'n 2; Decl. of Juan Gamboa ¶ 3 ("Gamboa Decl."), ECF 19-1.

The "right to arbitration, like any other contract right, can be waived."  *Ironshore Specialty Ins. Co. v. Kling Consulting Grp., Inc.*, No. 19-CV-05787-ODW (PJWx), 2020 WL 3978080 (C.D. Cal. May 27, 2020) (quoting *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009)).  However, "[w]aiver of a contractual right to arbitration is not favored," and "any party arguing waiver of arbitration bears a heavy burden of proof."  *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 940 (9th Cir. 2019) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).  It follows that "[a]ny examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements."  *Fisher*, 791 F.2d at 694.  "Further, waiver of the right to compel arbitration is a rule for arbitration, such that the FAA controls."  *Ironshore*, 2020 WL 3978080, at *3 (internal quotation omitted).  Thus, the Court applies the "federal law standard for determining whether an arbitration agreement has been waived."  *Newirth*, 931 F.3d at 940.

In the Ninth Circuit, "[a] party seeking to prove that the right to compel arbitration has been waived must carry the heavy burden of demonstrating: (1) knowledge of an existing right to compel arbitration; (2) intentional acts inconsistent with that existing right; and (3) prejudice to the person opposing arbitration from such inconsistent acts."  *Id.* (quoting *Fisher*, 791 F.2d at 694).  When evaluating whether a party has acted inconsistently with its right to arbitration, the Court must consider whether the parties' actions "indicate a conscious decision . . . to seek judicial judgment on the merits of [the] arbitrable claims, which would be inconsistent with a right to arbitrate."  *Newirth*, 931 F.3d at 941.  "A party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the

merits of a case for a prolonged period of time in order to take advantage of being in court." *Id.*

This Court finds that Garcia did not meet its heavy burden of proving Din Tai Fung waived its right to compel arbitration. Garcia must prove Din Tai Fung knew it had a right to compel arbitration, intentionally acted inconsistently with that right, and prejudiced Garcia as a result of the inconsistent acts. However, Garcia's argument falls short. Garcia asserts Din Tai Fung "fail[ed] to disclose the existence of the arbitration agreement" despite "repeated requests" for her employment records, but offers no evidence that Din Tai Fung made an intentional decision to not compel arbitration or litigate in court to Garcia's disadvantage. Opp'n 2. Moreover, Din Tai Fung posits several defenses, which casts significant doubt as to whether Din Tai Fung acted in bad faith. *See* Reply 1-2. First, Din Tai Fung did not act in bad faith with regards to Garcia's request for employment documents. Din Tai Fung highlights that Garcia's counsel sent only one request by mail and one phone call to its corporate office, rather than "numerous requests" as stated in Garcia's opposition brief. Gamboa Decl. ¶¶ 2-3. Garcia has also not submitted a discovery request for the employment records. Second, Din Tai Fung emphasizes that the arbitration agreement was not pertinent to mediation proceedings over a discrimination claim by Garcia against Din Tai Fung. Reply 1. Moreover, even if there was a delay in disclosing the arbitration agreement, the delay is not unreasonable given the mediation concluded shortly before Garcia filed this lawsuit. Lastly, Din Tai Fung states there is a strong federal policy favoring enforcement of arbitration agreements. *See Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). In light of Din Tai Fung's counterarguments, Din Tai Fung did not waive its right to compel arbitration.

This Court concludes that the arbitration agreement is enforceable, and Garcia must arbitrate all claims related to her employment and termination at Din Tai Fung.

United States District Court
Northern District of California

16

## B.    Motion to Dismiss

The only remaining claim is Garcia's PAGA claim, and the Court declines to extend supplemental jurisdiction over the PAGA claim and dismisses the case.

The Court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Where a party asserts that CAFA gives rise to subject matter jurisdiction for a PAGA claim, the "[r]epresentative action under California's [PAGA] [is] not a 'class action' within meaning of Class Action Fairness Act (CAFA), as required to allow district court to exercise original jurisdiction over PAGA action."  *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122-23 (9th Cir. 2014); *see also id.,* 747 F.3d at 1119 (holding "CAFA provides no basis for federal jurisdiction" over a PAGA action); *Echevarria v. Aerotek, Inc.*, 814 Fed. Appx. 321, 322 (9th Cir. 2020) (affirming district court's ruling that CAFA jurisdiction does not apply to Plaintiff's remaining PAGA claim once the class action claims were dismissed).

The Court can properly exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  The doctrine of supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right."  *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966); *see also Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004) ("Like our sister circuits, we hold that the actual exercise of personal pendent jurisdiction in a particular case is within the discretion of the district court.").

Section 1367(c) outlines when it is appropriate for a federal court to decline to exercise supplemental jurisdiction:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

This Court has a duty to exercise discretion when "deciding whether to decline, or to retain,

1   supplemental jurisdiction over state law claims when any factor in subdivision (c) is implicated."

2   *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997).  Where subject matter jurisdiction

3   is based on federal question, the Ninth Circuit has held that "[i]n the usual case in which all federal-

4   law claims are eliminated before trial, the balance of factors to be considered under the pendent

5   jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward

6   declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks,*

7   *Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343,

8   350 n. 7 (1988)).  Applying these factors to the instant case, this Court finds it appropriate to decline

9   supplemental jurisdiction over the remaining PAGA claim.

10         First, declining supplemental jurisdiction would serve the interest of judicial economy,

11   fairness, and convenience.  While both parties have invested resources into this litigation, this Court

12   has not yet considered the merits of the PAGA claim.  *See Echevarria*, 2019 WL 2503377 (finding

13   no economy lost by remanding a PAGA claim to state court where the district court had not yet

14   considered the PAGA claim's merits).  Moreover, Garcia initially filed this lawsuit in federal court

15   rather than in state court.  If Garcia refiles her suit in state court, the state court will provide an

16   equally fair adjudication of the remaining PAGA claim.  *Wellons v. PNS Stores, Inc.*, No. 18-CV-

17   2913 TWR (DEB), 2020 WL 6203361, at *3 (Oct. 20, 2020).  Lastly, though Garcia amended her

18   complaint to invoke subject matter jurisdiction pursuant to CAFA (28 U.S.C. § 1332(d)), this court

19   does not have original jurisdiction via CAFA over the PAGA claim.  In addition, Garcia provided

20   no evidence for invoking CAFA beyond claiming the class claims met the amount-in-controversy

21   and diversity requirements.  *Id.*  This factor favors declining supplemental jurisdiction over the

22   PAGA claim.

23         Second, comity weighs in favor of declining supplemental jurisdiction.   PAGA is founded

24   solely in state law, and the primary responsibility for developing and applying state law rests with

25   the California courts.  *See generally Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 429 (9th

26   Cir. 2015) (discussing history and purpose of PAGA); *see also Rodriguez v. Emeritus Corp.*, No.

27   18-CV-00341-KJM-CKD, 2018 WL 4214922, at *6 (E.D. Cal. Sept. 5, 2018) (declining to exercise

28   supplemental jurisdiction over PAGA claim, and remanding PAGA claim to state court once all

other claims were dismissed).  State courts have an interest in adjudicating the PAGA claim, especially where most of the alleged acts took place within California, and both parties are either California residents or California businesses.  This factor also favors declining supplemental jurisdiction.

In light of these factors, the Court declines supplemental jurisdiction over the remaining PAGA claim under 28 U.S.C. § 1367(c)(3).


## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS Din Tai Fung's Motion to Compel Arbitration and Motion to Dismiss. The PAGA claim is DISMISSED WITHOUT PREJUDICE. The Clerk shall close the case.


**IT IS SO ORDERED.**

Dated: November 20, 2020

_____
BETH LABSON FREEMAN
United States District Judge